## Commonwealth v. Bechtel Dairies et al.

*Henry L. Shepard,* for Commonwealth.

*Wisler, Pearlstine, Talone & Gerber,* for defendants.

CORSON, J., March 18, 1954.—The three above-entitled cases are brought before this court upon certiorari from a justice of the peace before whom the three defendants were summarily convicted and fined $50 each for an alleged violation of section 702 of the Pennsylvania Milk Control Law of April 28, 1937, P. L. 417, as amended. Exactly the same questions are raised in each case and the question to be decided in each case is whether or not the convictions upon the record can be sustained. From the record it would appear that each of these defendants is a milk dealer and producer.

Section 702 of the Milk Control Law, supra, provides as follows:

"Each milk dealer shall, from time to time, as required by *rule, regulation or order* of the Commission, make and file a verified report, on forms prescribed by the commission, of all matters on account of which a record is required to be kept, together with such other information or facts as may be pertinent and material within the scope of the purposes and intent of this Act. Such report shall cover a period specified in the order and shall be filed within a time fixed by the commission." (Italics supplied.)

Article 3, sec. 308, of such Milk Control Law provides as follows:

"Every general rule, regulation or order of the commission shall be *posted for public inspection in the main office of the commission at least six days before it shall become effective,* where it shall remain conspicuously posted until twenty days after its effective date, and shall be given such further publicity, by advertisement, or announcement, in a newspaper or otherwise, as the commission shall deem advisable. At least three days before it shall become effective, copies of such general rule, regulation or order shall be mailed to all licensees . . . affected thereby; Provided, however, that such mailing shall not be construed as a condition upon which the validity of any such rule, regulation or order depends. A certified copy of an order applying only to the particular person or persons named therein shall be served on the person or persons affected. . . . The posting in the main office of the commission, of any rule, regulation or order not herein required to be served, and the giving of such further publicity thereto as the commission deems advisable, . . . shall constitute due and sufficient notice to all persons affected by such rule, regulation or order. A rule, regulation or order of the commission,

when duly posted and so publicized, or when properly served, as provided in this section, shall have the force and effect of law. . . . The mailing, or service by mail, herein required shall be by deposit in a United States Post Office, or in any receptacle thereof. . . ." (Italics supplied.)

According to the record submitted before the justice, the board duly passed a resolution in which it was decided that certain dealers should be ordered to produce to the commission certain information relating to lists of wholesale buyers to whom any milk dealers had sold between May 1 and May 31, 1953. This action was apparently taken on May 28, 1953, and was intended to require dealers to furnish the required lists prior to June 15th. Since obviously no dealer could prepare such a report until midnight of May 31, 1953, and such report had to be submitted to Harrisburg before June 15th, he had 15 days within which to submit such report.

According to the record and from the argument of counsel it would appear that the report of none of these defendants reached Harrisburg before June 15th. Admittedly also these reports were received at Harrisburg a few days after the deadline fixed by the commission, and that at least one of them was dated, and the affidavit taken thereon, some days before the deadline. The Commonwealth would seem to admit that if these reports had been placed in the mail prior to the 15th, that would have been sufficient compliance. Defendants' counsel complains that the Milk Control Board refused to produce or to exhibit to defendants the postmarks on the envelopes in which these reports were received. It is worthy of note that while these reports were a few days late they were received before these prosecutions were started.

Defendants have filed various exceptions to the record of the justice of the peace. Without discussing

them specifically we feel that the main questions raised are as follows: (1) That a paper entitled at the top as a "Bulletin No. 438" cannot be construed as a rule, regulation or order of the commission; (2) that the "bulletin", if it is such a rule, regulation or order, was admittedly posted on May 29, 1953, and that this is less than six days before the effective date of the bulletin or whatever it may be construed to be; (3) that the bulletin is not an order because it states that the Milk Control Commission, etc., *"will* require milk deliveries, etc., to be reported, etc."; (4) that there is no jurisdiction in the County of Montgomery for failure to do an act required to be done in Dauphin County.

Taking up these contentions in their order, we first consider the question of whether or not a paper entitled and posted as a "bulletin" can be construed as an order, rule or regulation. We conceive that it cannot. Under the Milk Control Law, supra, the Attorney General contends that the posting of such order on a bulletin board in the office of the Milk Control Commission is sufficient notice to every milk dealer in the State of Pennsylvania, that such order has been made and is binding upon such dealers. Without passing upon the question of the legality of the provision in the Milk Control Act, it is sufficient to say that for practical purposes it places a terrific burden upon all milk dealers. Every milk dealer or producer subject to such orders would have to start immediately after milking the cows in the morning to make the trip to Harrisburg to see whether rule no. 479-B-12 had been posted upon the bulletin board in the office of the commission. If he lived in a remote section of the State he would have great difficulty in getting back in time to milk his cows at night. Centuries ago the people rebelled because of the fact that the laws were unwritten and the king could punish his subjects for violation of a law of which they had, and could have had, no knowl-

edge. Since that period the laws have been written and made available to the persons affected by such laws. The Constitution of Pennsylvania provides that no act shall be constitutional unless in its title it shall set forth the scope, etc., of the act. All of us, whether milk dealers or otherwise, receive in our mail everyday, bulletins put out by various organizations which no person reads for the purpose of determining whether it may be a rule, regulation or order. The very title "bulletin" indicates to the ordinary person a news bulletin of some sort. Even if these defendants had gone to Harrisburg five days before May 31st, they would not even have seen this bulletin posted in the office. If they had seen it, would they have been required to read every paper entitled "bulletin" on the bulletin board to see whether such bulletin contained a regulation, order or rule of the commission? We apprehend not. By analogy with the constitutional provision as to acts of assembly, certainly it would seem only fair that an alleged order, regulation or rule should be so entitled rather than referred to as a "bulletin". Since we feel that the order was not properly posted as an order, it did not become effective upon these defendants.

As to the second contention, concerning the effective date, we feel that the effective date of this alleged order was May 31st, and since the paper was not posted until May 29th, it was certainly not six days before the effective date of the order.

While the third contention is not as strong in our estimation as the others, yet because of the uncertainties of the English language, it can be misleading to state that the milk commission "will" require dealers to do something in the future. It would certainly seem to be better wording for the commission to issue an order in the present tense rather than a statement of what it will do in the future.

The fourth contention as to jurisdiction raises a most interesting question. These defendants are not charged with a crime in the sense that they performed an illegal act. The alleged crime in these cases is not the doing of any certain act, but the failure to do a certain thing. Since it is required that these reports be furnished to the Milk Control Commission at Harrisburg, it is difficult to see how a justice of the peace in the County of Montgomery has jurisdiction to pass sentence upon a man charged with failing to do a required act in Dauphin County.

The fifth contention as to bad faith is not a question that can be raised on certiorari and we therefore will not discuss it.

And now, March 18, 1954, for the reasons given in the foregoing opinion, the exceptions raised upon the three writs of certiorari are sustained and the convictions of the three defendants are hereby set aside.